UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARLES M. PATEMAN,

        Plaintiff,

vs.

THE CITY OF WHITE PLAINS, SERGEANT LAVALLE LARRIER in his individual and official capacities, POLICE OFFICER PAUL WENZEL in his individual and official capacities, LIEUTENANT EDWIN ROBINSON in his individual and official capacities, POLICE OFFICERS JOHN DOES 1-10 in their individual and official capacities,

        Defendants.

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

By and through his attorneys, Randolph M. McLaughlin, Debra S. Cohen, and Danielle B. Sullivan of Newman Ferrara LLP, Plaintiff alleges upon knowledge, information, and/or belief as follows:

### PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff Charles Pateman ("Plaintiff") seeks relief for the Defendants' violation of his rights, privileges, and immunities secured by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments of the United States Constitution, and the Constitution and laws of the State of New York.

2. It is alleged that on or about January 25, 2017, Plaintiff's fiancée called and asked Plaintiff to come to her apartment to assist her in an incident involving her daughter. Upon his arrival at the apartment building, Plaintiff was assaulted and battered by two City of White Plains police officers.

3. In conducting Plaintiff's arrest, excessive force, without justification, was used by

1

the arresting officers, resulting in serious injuries to the 72-year-old Plaintiff.

4. As a result of restraining Plaintiff with tight handcuffs, Plaintiff began to bleed heavily from his wrists. At all times relevant to the allegations of the Complaint, blood was plainly visible to the officers.

5. Instead of transporting the Plaintiff to the hospital, he was brought to police headquarters where he sat for an extensive period of time, handcuffed to a rail, while bleeding and pleading for medical attention, which was denied and/or delayed.

6. As a direct and proximate result of the use of force used, Plaintiff suffered, and continues to suffer from physical, emotional and psychological injuries.

7. The two arresting officers and a number of officers and supervisors at police headquarters were deliberately indifferent to Plaintiff's medical needs and failed to intervene to prevent the violations of Plaintiff's rights.

8. As a remedy for these violations alleged therein, Plaintiff seeks compensatory damages, punitive damages and an award of the costs and expenses of this action including, but not limited to, attorneys' fees to the Plaintiff pursuant to 42 U.S.C. § 1988; and any such other and further relief as this Court may deem appropriate.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state law.

10. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within the district.

## PARTIES

11.     Plaintiff Charles Pateman is a resident of Westchester County, New York. Plaintiff is a businessman and developer in Westchester. He has been involved for over fifty years in the development of major projects throughout the county. Plaintiff is a well-respected and active member in the County of Westchester. Plaintiff had never been arrested, prior to this incident.

12.     Defendant The City of White Plains ("City") is a duly constituted municipal corporation of the State of New York, located in Westchester County. It is authorized under the laws of the State of New York to maintain a police department, the White Plains Police Department ("WPPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

13.     Defendant Sergeant LaValle Larrier ("Larrier") is a police officer employed by the City. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

14.     Defendant Police Officer Paul Wenzel ("Wenzel") is a police officer employed by the City. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

15.     Defendant Lieutenant Edwin Robinson ("Robinson") is a police officer employed by the City. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his

individual and official capacities.

16. Defendants Police Officers John Does 1-10, whose names are not presently known to Plaintiff, were at all times relevant herein employees of the City. These police officers observed Plaintiff while he was injured and being denied medical attention at White Plains police headquarters, but failed to intervene, to provide and/or request adequate and immediate medical attention for Plaintiff's injuries.

## FACTUAL ALLEGATIONS

17. The incident complained of herein occurred on January 25, 2017, and began at approximately 8:00 p.m., at an apartment building, located at 33 Barker Avenue, in White Plains, New York.

18. Defendants Larrier and Wenzel, along with other White Plains Police Department officers, responded to the scene on a report of an ongoing dispute between a mother, Ms. Ada Sanders, and her daughter.

19. Plaintiff, who was 72-years-old at the time, was advised by his fiancée, Ms. Sanders, that she was having a dispute with her daughter, and called Plaintiff on the telephone and asked him to come to her apartment to assist.

20. Plaintiff arrived at the premises at approximately 8:30 p.m.

21. When Plaintiff approached the vestibule of the building, he encountered Defendant Wenzel.

22. Defendant Wenzel opened the door to the lobby to let Plaintiff into the building.

23. When Plaintiff entered the lobby, he approached the elevator to get to his fiancée's apartment on the 6th floor.

24. As Plaintiff approached the elevator he encountered Defendant Larrier, who was

4

standing near the elevator.

25. Plaintiff advised Defendant Larrier that he had received a call from Ms. Sanders requesting his assistance with her daughter.

26. When Plaintiff attempted to take the elevator to his fiancée's apartment, Defendant Larrier prevented Plaintiff from entering the elevator and told him that he could not go upstairs.

27. Within twenty (20) seconds, Defendant Wenzel approached Plaintiff and Defendant Larrier, and removed his handcuffs from his holster, appearing ready to handcuff Plaintiff without cause.

28. Plaintiff pleaded with the Defendant officers to allow him to go the apartment and to be with his family.

29. The Defendant officers continued to prohibit Plaintiff from going upstairs.

30. At no time was Plaintiff threatening the safety of anyone, including the safety of the Defendant officers.

31. When Defendant Larrier decided to arrest Plaintiff, he shoved Plaintiff away from the elevator further into the lobby.

32. During the course of the arrest, Plaintiff was slammed into a wall with such force that his glasses were knocked off, cutting his face.

33. While Plaintiff was forced up against the wall, Defendants Larrier and Wenzel began aggressively handcuffing Plaintiff.

34. The handcuffs were closed very tightly on Plaintiff's wrists.

35. While Plaintiff was forced up against the wall, he verbally expressed his pain.

36. At no point was Plaintiff resisting or evading the arrest.

5

37. Defendants Larrier and Wenzel violently moved Plaintiff from the wall and pushed him towards the door to exit the building.

38. As a result of the excessive force used against Plaintiff, and the fact that his hands were restrained behind his back by the handcuffs, Plaintiff fell to the ground and struck his head on the lobby floor.

39. Plaintiff began feeling very dizzy, as if he was going to vomit.

40. Defendants Larrier and Wenzel lifted Plaintiff up by his arms and the handcuffs, ordering him to stand up.

41. Defendant Larrier then advised Plaintiff that if he did not get up, they would drag him out of the building.

42. Plaintiff then stood up, and Defendants Larrier and Wenzel aggressively escorted Plaintiff out of the building.

43. As a result of the tightness of the handcuffs on his wrists, Plaintiff began bleeding heavily. He could feel blood dripping down his hands, which were handcuffed behind his back.

44. Upon arriving at the police car outside of the building, Plaintiff, who was dizzy and in severe pain, took a moment before he entered into the back of the police car.

45. At the police car, Defendant Larrier noticed Plaintiff's blood on his own hands.

46. Despite his knowledge that Plaintiff was bleeding, Defendant Larrier failed to render aid or seek medical assistance for Plaintiff.

47. Plaintiff asked the officers if they could loosen the handcuffs, as they were too tight on his wrists.

48. Due to the tightness on his wrists, Plaintiff was in severe pain, like a knife was cutting into his wrists.

49. Defendants Larrier and Wenzel refused, even though it was or should have been apparent to them that the tightness was causing Plaintiff to bleed.

50. As he attempted to enter the back seat of the police car, Plaintiff had a hard time maneuvering himself into the car, due to the severe pain he was in and the restriction of his arms being cuffed behind his back too tightly.

51. Defendants Larrier and Wenzel aggressively handled Plaintiff by forcing him into the back of the car.

52. Said Defendants failed to securely fasten Plaintiff in the back seat of the police vehicle.

53. In the police car, on the way to police headquarters, Plaintiff made numerous statements to Defendant Wenzel that he did not feel well and was in need of medical attention and requested multiple times that his handcuffs be loosened.

54. His pleas to have the handcuffs loosened and for medical attention were ignored.

55. At one point on the way to police headquarters, Defendant Wenzel took a sharp turn, and as a result of the failure to properly secure Plaintiff in the back seat, Plaintiff was thrown about in the rear of the vehicle.

56. Despite having failed to properly secure Plaintiff in the car, Defendant Wenzel ordered Plaintiff to sit up after he fell over.

57. This fall created more pressure on his wrists, arms, and shoulders, increasing the pain Plaintiff was already experiencing from the tight handcuffs that were piercing his skin.

58. Upon arriving at police headquarters, Plaintiff was unable to exit the police car on his own.

59. Plaintiff explained to Defendant Wenzel that he was nauseous, dizzy and his head

hurt and requested medical attention for his injuries.

60. Plaintiff was told by Defendant Wenzel that no ambulance was available and that he needed to be brought into the police station first.

61. Defendant Wenzel then put on rubber gloves.

62. An officer, whose name is not presently known to Plaintiff, came to the car and removed Plaintiff.

63. Plaintiff then came into contact with Defendant Robinson, the Lieutenant in charge.

64. Defendants Robinson, Wenzel, and other officers whose names are not presently known to Plaintiff, were aware that Plaintiff was in significant pain and was bleeding profusely, as the blood was plainly visible.

65. Again, while inside the police station, Plaintiff advised the Defendants that he needed immediate medical attention for his injuries and requested that his handcuffs be loosened.

66. Plaintiff was un-handcuffed momentarily so Defendant Wenzel could handcuff him to a rail at the station.

67. Upon being un-handcuffed, blood gushed from Plaintiff's wrists, covering his hands, suit jacket, and dress shirt in blood.

68. Defendant Wenzel then re-handcuffed Plaintiff, on top of his untended wounds, to a rail.

69. Thereafter, Plaintiff sat in a chair, handcuffed, where he remained bleeding, without medical attention for an extensive period of time.

70. At one point while Plaintiff was restrained in the chair awaiting medical attention, Plaintiff fell to the ground.

71. Upon information and belief, an officer, whose name is not presently known to Plaintiff, observed Plaintiff bleeding and handcuffed to the railing, and stated to other officers, "Who the f--- put those handcuffs on so tight? He could have a heart attack."

72. Said officer then stated "What the f--- is going on here? Are you kidding me?"

73. At no time at police headquarters were Plaintiffs wounds washed, wrapped, bandaged or treated in any way.

74. Defendants Wenzel, Robinson, and other officers whose names are not presently known to Plaintiff, failed to provide Plaintiff with the medical attention he needed or promptly request the same.

75. Plaintiff was ultimately brought, handcuffed and with his legs shackled, to the hospital via ambulance, accompanied by Defendant Wenzel.

76. When he was placed in a hospital bed, Plaintiff was handcuffed to the rail on the bed.

77. At the hospital, Plaintiff was seen, in handcuffs and leg shackles, by hospital staff and members of the public who were present at the hospital, causing him emotional distress and embarrassment.

78. After Plaintiff was treated at the hospital for his injuries, he was returned to police headquarters where he was released with a desk appearance ticket.

79. The next day, and the subsequent weeks, Plaintiff sought additional medical care for his physical and psychological injuries as a result of the aforementioned incident.

**Physical and Psychological Injuries as a Result of the Incident**

80. As a result of the aforementioned incident, Plaintiff received lacerations, contusions and swelling to his wrists; a head injury; lacerations and abrasions to his face; acute

exacerbation in his spine; whiplash; multiple abrasions to both shins; abrasions to his left thigh; and a cervical strain.

81. It was later discovered that Plaintiff has a fully torn rotator cuff in his right arm; a partially torn rotator cuff in his left arm; and an exacerbated tear in his right meniscus.

82. Due to his wrist injuries, Plaintiff suffers from carpal tunnel and must wear a wrist brace. As a result of the tightness of the handcuffing, Plaintiff has scars to his wrists and frequently experiences numbness in his fingers.

83. As a result of the aforementioned incident, Plaintiff suffers from headaches, lower back pain, neck pain, knee pain, left and right shoulder pain, and left hip pain. He also experiences continued mental trauma, including flashbacks of the aforementioned incident.

84. Plaintiff has been diagnosed by a psychiatrist with post-traumatic stress disorder as a result of the aforementioned incident.

85. Due to these injuries, Plaintiff is unable to perform necessary work obligations and has been unable to pursue ongoing and future work projects.

86. Plaintiff subsequently received MRIs for the aforementioned injuries and has future surgery and procedures scheduled for his injuries.

87. Plaintiff was prescribed medications for his pain and suffering.

## NOTICE OF CLAIM

88. A Notice of Claim on behalf of Plaintiff, pursuant to New York General Municipal Law § 50-e, was timely served upon Defendant City on April 19, 2017. More than thirty days have elapsed without the matter being resolved by the City. The Notice of Claim provided detailed information regarding the actions that the officers took during the incident with Plaintiff, the injuries that Plaintiff sustained, and was sufficient to put the officers and the City on

notice of the conduct in which they were alleged to have engaged.

## FEDERAL CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*(Violation of the Rights Secured under the Fourth and Fourteenth Amendments for Excessive Force Against the Individual Defendants)*

89. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

90. The manner in which Plaintiff was arrested and handcuffed and the subsequent denial of immediate and appropriate medical care by Defendants were unnecessary and unwarranted in the performance of their duties as police officers and employees of the City, constituting an unreasonable and excessive use of force.

91. Said Defendants, even though they knew or should have known that tight handcuffs should not cause excessive bleeding, failed to remedy the situation and/or seek proper and immediate medical care for Plaintiff.

92. By reason of the foregoing, and by maliciously and sadistically arresting and handcuffing Plaintiff, and denying him appropriate and immediate medical care, Defendants, acting within their capacities as police officers and employees of the City, and within the scope of their employment, intentionally committed willful, unlawful, unwarranted, and intentional assaults and batteries upon Plaintiff and were deliberately indifferent to his health and safety.

93. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

94. The aforementioned actions of said Defendants deprived Plaintiff of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF
*(Violation of the Rights Secured under the Fourteenth Amendment for Inadequate Medical Treatment Against the Individual Defendants)*

95. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

96. Defendants, despite being aware that Plaintiff was seriously injured, with deliberate indifference refused to administer and properly procure immediate and adequate medical care.

97. Said Defendants were aware of the substantial risk that serious harm would result if Plaintiff did not receive immediate and adequate medical attention.

98. Despite Plaintiff's numerous and continuous pleas for medical care, Defendants were deliberately indifferent to Plaintiff's medical needs for the sole purpose of causing pain to Plaintiff.

99. Said Defendants, even though they knew or should have known that tight handcuffs should not cause excessive bleeding, failed to remedy the situation and/or seek proper and immediate medical care for Plaintiff.

100. Due to said Defendants' failure to immediately and adequately provide Plaintiff with proper medical care, Plaintiff experienced serious pain.

101. The aforementioned actions of said Defendants deprived Plaintiff of rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983.

## THIRD CLAIM FOR RELIEF
*(Violation of the Rights Secured under the Fourteenth Amendment for Failure to Intervene Against Defendants Robinson and John Does 1-10)*

102. Plaintiff incorporates the allegations contained in the previous paragraphs of this

Complaint as if fully set forth herein.

103. The individual Defendants failed to take reasonable steps to intervene to prevent the violations of Plaintiff's constitutional rights, though they were presented with ample realistic and reasonable opportunities to do so.

104. Said Defendants had an affirmative duty to intervene on behalf of Plaintiff, whose constitutional rights were being violated in the presence of other officers.

105. Said Defendants, even though they knew or should have known that tight handcuffs should not cause excessive bleeding, failed to remedy the situation and/or seek proper and immediate medical care for Plaintiff.

106. Defendants failed to intervene to prevent the unlawful conduct described herein.

107. As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time, he was put in fear of his safety, was humiliated, was denied appropriate and immediate medical care, and suffered and continues to suffer from serious physical, psychological, and emotional harm.

108. The aforementioned actions of said Defendants deprived Plaintiff of rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983.

### FOURTH CLAIM FOR RELIEF
*(Violation of the Rights Secured under the Fourth and Fourteenth Amendments for Supervisory Liability against Defendants Larrier and Robinson)*

109. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

110. Defendants Larrier and Robinson performed supervisory functions during the aforementioned incident and were responsible for supervising the police officers involved.

111. Defendant Larrier directly and personally participated in the violations against Plaintiff by using excessive force in effectuating his arrest, using excessive force in the administration of handcuffs, and failing to provide Plaintiff with immediate and appropriate medical care.

112. Defendants Larrier and Robinson were aware of Plaintiff's injuries and the excessive bleeding he experienced as a result of the tight handcuffs, and failed to instruct their officers to either remove the handcuffs or take Plaintiff to a hospital or otherwise render aid.

113. Said Defendants, even though they knew or should have known that tight handcuffs should not cause excessive bleeding, failed to remedy the situation and/or seek proper and immediate medical care for Plaintiff.

114. Said Defendants failed to properly supervise said officers and took no actions that would have prevented the injuries sustained by Plaintiff.

115. Defendants Larrier and Robinson were acting within their capacities as police officers, supervisors, and employees, within the scope of their employment.

116. As a direct and proximate result of the said Defendants' failure to supervise its subordinates, Plaintiff sustained the damages alleged herein.

117. The aforesaid actions of said Defendants deprived Plaintiff of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF
*(Monell Claim against Defendant City of White Plains)*

118. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

119. On numerous prior occasions, there have been allegations and lawsuits alleging

that employees of the Defendant City used excessive force during the course of an arrest.

120. Defendant City, through the White Plains Police Department, permitted, tolerated, and was deliberately indifferent to the pattern and practice of the use of excessive force by staff, employed as police officers, including, but not limited to, the instant incident.

121. On information and belief, the City of White Plains maintained customs, policies, and practices regarding the supervision and/or training of its police officers that led to deprivations of Plaintiff's rights under the Fourth and Fourteenth Amendments.

122. The widespread indifference to excessive force and denial of adequate and immediate medical care constitutes a municipal policy, practice, or custom and led to Plaintiff's constitutional deprivations.

123. Defendant City, upon information and belief, failed to properly train or supervise its police officers on the use of physical force.

124. Defendant City, upon information and belief, failed to properly train or supervise its police officers on providing appropriate and immediate medical care.

125. Defendant City, upon information and belief, failed to properly train or supervise its police officers on how to handle family members when responding to a domestic dispute.

126. Defendant City, upon information and belief, failed to properly train or supervise its police officers on how and when to properly effectuate an arrest, especially arrests of elderly individuals and those with health problems.

127. Defendant City, upon information and belief, failed to properly train or supervise its police officers on how to properly administer handcuffs, especially on elderly individuals and those with health problems.

128. Defendant City, upon information and belief, failed to properly train or supervise

its police officers on how to properly transport arrestees.

129. Defendant City, upon information and belief, failed to properly train or supervise its police officers on how to handle arrestees suffering from significant medical conditions.

130. As a result of the failure of Defendant City to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, Defendant City has authorized, ratified, and has been deliberately indifferent to the acts and conduct complained of herein.

131. The City, by its policies, practices, acts and omissions, caused Plaintiff to suffer violations of his due process rights and his right to be free from gratuitous and excessive force under the Fourth and Fourteenth Amendments of the United States Constitution.

132. The failure of the City to properly supervise and/or discipline the Defendant officers so as to prevent them from violating the constitutional rights of individuals, signifies a policy or custom of inaction by the City and represents deliberate indifference to the constitutional rights of Plaintiff.

133. Plaintiff sustained the damages alleged herein as a direct and proximate result of the City's policies, practices and/or customs.

134. As a result of the aforementioned policies, practices and/or customs of the Defendant City, Plaintiff was deprived of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983.

## STATE CLAIMS FOR RELIEF

### SIXTH CLAIM FOR RELIEF
*(For Assault and Battery Against Defendants Larrier and Wenzel)*

135. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

136. Defendants Larrier and Wenzel without just cause, or provocation, threatened to use force and used excessive force against Plaintiff. The use of such force was not justified or warranted under the circumstances and constituted unreasonable and unnecessary force.

137. The threat to use such force and the use of such force caused Plaintiff to suffer and experience fear and apprehension of physical harm, pain and suffering, permanent physical injuries, and severe emotional distress.

138. The actions of said Defendants were intentional, malicious and were committed with wanton disregard for the rights of Plaintiff.

139. The actions of said Defendants were unjustified and unnecessary in the performance of their duties as police officers and were unreasonable, unwarranted and constituted excessive use of force.

140. The actions aforesaid constituted unlawful assaults and/or batteries upon Plaintiff.

141. As a direct result of the aforementioned conduct of said Defendants, Plaintiff suffered, and continues to suffer, physical, psychological, and emotional injuries.

142. Defendant City is responsible under respondeat superior for the actions of said Defendants, as the acts were committed within the scope of their employment as officers.

### SEVENTH CLAIM FOR RELIEF
*(For Negligence Against All Defendants)*

143. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

144. The individual officers, acting within the scope of their employment, negligently discharged their duties and thereby caused Plaintiff to sustain the injuries and deprivations aforementioned.

145. The acts of negligence of said officers included, but are not limited to the use of

17

excessive force in effectuating Plaintiff's arrest, the use of excessive force in the administration of handcuffs, the deliberate indifference to Plaintiff's medical needs and the failure of the other Defendants to take reasonable steps to intervene to prevent the excessive use of force and denial of proper medical care, though they were presented with ample realistic opportunities to do so.

146. Defendant City is responsible under respondeat superior for the negligence of its officers committed within the scope of their employment.

147. Defendant City was negligent by failing to properly train or supervise its officers in the use of physical force.

148. Defendants were negligent in failing to provide and/or procure immediate and adequate medical care, despite being aware that Plaintiff was seriously injured.

149. By the actions described above, each and every Defendant, jointly and severally, has committed the foregoing wrongful acts against Plaintiff, which are tortious under the Constitution and the laws of the State of New York.

## EIGHTH CLAIM FOR RELIEF
*(Intentional Infliction of Emotional Distress Against All Defendants)*

150. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

151. Defendants, intentionally and recklessly, conducted themselves in a manner so shocking and outrageous that it exceeded all reasonable bounds of decency so as to cause severe emotional distress.

152. Plaintiff sustained the damages herein alleged as a direct and proximate result of the actions of the Defendants.

## NINTH CLAIM FOR RELIEF
*(Respondeat Superior Liability Against Defendant City of White Plains)*

153. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

154. At all times pertinent hereto, Defendants were acting within the scope of their employment as police officers for the City of White Plains. Defendant City, through its agents, expressly or implicitly authorized the individual Defendants to violate Plaintiff's constitutional rights, as described above.

155. Defendant City is thus liable under the doctrine of respondeat superior, for the intentional and negligent torts of Defendants herein, which were committed within the scope of their employment.

## PUNITIVE DAMAGES

156. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

157. The acts of the individual Defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Plaintiff without regard for his well-being and were based on a lack of concern and ill-will towards the Plaintiff. Such acts therefore warrant an award of punitive damages.

158. The City is responsible for the actions of its employees as complained of herein under the doctrine of respondeat superior.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and relief against the Defendants as follows:

a. Compensatory damages in an amount of three million dollars;

b. Punitive damages in an amount to be determined at trial;

c. An award of the costs and expenses of this action including attorneys' fees to the Plaintiff pursuant to 43 U.S.C. §1988; and

d. Any such other and further relief as this Court may deem appropriate.

## A JURY TRIAL IS DEMANDED

DATED: New York, New York
August 14, 2017

NEWMAN FERRARA LLP

By: _____
Randolph M. McLaughlin
rmclaughlin@nfllp.com
Debra S. Cohen
dcohen@nfllp.com
Danielle B. Sullivan
dsullivan@nfllp.com
1250 Broadway, 27th Floor
New York, New York 10001
Tel: 212-619-5400
Fax: 212-619-3090

*Counsel for Plaintiff*